(83 App. Div. 410.)

### PEOPLE ex rel. SCHLESINGER v. DE FOREST.

(Supreme Court, Appellate Division, First Department. May 8, 1903.)

1. MUNICIPAL CORPORATIONS—CLERKS—PROBATIONARY TERM—CIVIL SERVICE.

Laws 1899, p. 797, c. 370, § 6, subd. 1, provides that the rules prescribed by the civil service commission shall have the force of law. Section 8 provides that all appointments in the classified service shall be for a probationary term not exceeding the term fixed by the rules. Rule 35 provides that appointments in the competitive class shall be for a probationary term of three months, and that retention after such term shall be equivalent to permanent appointment, but that, if not satisfactory, the employé may be discharged at the end of such term without regard to rule 42, which provides for preferment of charges, etc. *Held*, that where one was appointed an architectural draftsman in the tenement house department on the 26th of August, his appointment to take effect as of August 1st, and he was paid for the entire month of August as a draftsman, his discharge on December 2d, without charges, etc., under rule 42, was unauthorized.

Appeal from Special Term, New York County.

Mandamus by the people, on the relation of Frederick S. Schlesinger, against Robert W. De Forest, as tenement house commissioner of city of New York, to compel reinstatement of relator as an architectural draftsman in the tenement house department of the city of New York. From an order denying a motion for a peremptory writ, relator appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Jacob F. Miller, for appellant.
William B. Crowell, for respondent.

McLAUGHLIN, J. In April, 1902, Frederick S. Schlesinger passed an examination held by the municipal civil service commission for the position of architectural draftsman, and on the 20th of that month his name was certified to Robert W. De Forest, tenement house commissioner of the city of New York, for such position, at a salary of $1,200 per year. Shortly thereafter De Forest, as such commissioner, wrote Schlesinger that his name had been certified for the position named, and requested him to call at the office of the department with reference thereto. Schlesinger at the time this letter was written was absent from the state, but immediately upon his return he called as requested, and had a conversation with the chief clerk of the department, who told him to report at the office on the 1st of August, when he would be put at work. He did as directed, and by mistake was assigned to a clerical position, in which he performed services until about the 20th of August, when the mistake was discovered, and, in notifying the municipal civil service commission of that fact, the tenement house commissioner said:

"I am in need of an architectural draughtsman, and would be glad to appoint Mr. Schlesinger to this position, if you will certify his name to me. As he has been serving the city since August 1st, it would seem to me appropriate that you should certify him 'nunc pro tunc' as of July 31st, so that I may appoint him to take effect August 1st."

On the 26th of August the municipal service commission answered the letter, saying:

"In response to your requisition of August 20th, for an eligible list from which you may appoint one architectural draughtsman, I beg to certify the following: * * * Fred. S. Schlesinger, 157 East 51st street, New York. * * *"

On the following day the tenement house commissioner wrote the municipal civil service commission, saying:

"I beg to notify you of the following appointment to the service of the tenement house department: Fred S. Schlesinger, 157 East 51st street, New York City, architectural draughtsman. Salary, $1,200 per annum. This appointment to take effect Aug. 1st, 1902."

Schlesinger continued in the employ of the city until December 2d, when he was discharged without any charges having been preferred against him, or an opportunity having been given him to make an explanation. He thereafter made a motion for a mandamus to compel the tenement house commissioner to restore him to his former position, upon the ground that his discharge was illegal. The motion was denied, and he has appealed.

We are of the opinion that the motion should have been granted. The rules prescribed by the state and municipal civil service commissions, made in pursuance of the statute, have the force and effect of law (subdivision 1, § 6, c. 370, p. 797, Laws 1899), and section 8 of the statute cited provides, among other things, that all appointments or employments in the classified service shall be for a probationary term not exceeding the time fixed in the rules. Rule 35 adopted by the municipal civil service commission of the city of New York provides that:

"Every original appointment to or employment in any position in the competitive class shall be made for a probationary term of three months except in Schedule C, where the term shall be for one month, and an appointing or nominating officer in notifying a person certified to him for appointment or employment shall specify the same as for a probationary term only; and if the conduct, capacity and fitness of the probationer are satisfactory to the appointing officer, his retention in the service after the end of such term shall be equivalent to his permanent appointment; but if his conduct, capacity or fitness be not satisfactory he may be discharged at the end of such term without regard to the provisions of rule 42, limiting the power of removal. * * *"

Rule 42, referred to, provides for charges to be made as follows:

"To secure compliance with the provisions of the civil service law prohibiting removals because of political opinions or affiliations, no removal of any person in the classified service of the city of New York shall be valid unless and until a statement of the causes of such removal shall be filed with the municipal commission and a copy of the same furnished to the person sought to be removed and until such person has been afforded an opportunity to present an explanation in writing. * * *"

The respondent contends that upon the facts hereinbefore stated the relator was legally discharged under rule 35, that is, at the end of his probationary term of three months, and that there was, for that reason, no necessity of filing a statement of the causes of such removal with the municipal commission, or of giving the relator an opportunity to make an explanation. The real question presented,

therefore, is whether the relator was discharged within three months of the time when he first commenced to perform services for the city under his appointment as architectural draftsman, and we do not see how any one could suppose there could be but one answer to this question. His name was certified to the tenement house commissioner as a proper person to be appointed to the position of architectural draftsman on the 26th of August; on the following day the appointment was made, to take effect as of August 1, 1902—of which fact the civil service commission was notified—and the relator thereafter rendered services for the city in that capacity. Not only this, but he was paid for the entire month of August for services rendered as architectural draftsman, and the respondent certified, as appears from the certificate attached to the pay roll for that month, that he was employed "solely in the performance of the appropriate duties" of such position. He was not discharged until the 2d day of December, so that, if it be conceded that his appointment only dated from the 27th day of August, it does not aid the respondent, because the discharge was not made within three months of the time of the appointment, and it therefore became permanent under rule 35, and he could only be discharged in the manner provided in rule 42. It is not claimed that rule 42 was complied with, and for that reason the relator must be reinstated in his former position, and his application for a peremptory writ of mandamus to accomplish such result should have been granted.

The order appealed from, therefore, must be reversed, and the writ granted, with $50 costs and disbursements. All concur.