Samuel H. Hofstadter, J.
The petitioner has brought this proceeding under article 78 of the Civil Practice Act to review the revocation of his eligibility to appointment as a patrolman in the police department because of his medical disqualification.
The consequences to the petitioner of a medical rejection, in the circumstances, are so serious that the matter may not be left in its present state of uncertainty. The army record on which, apparently, the rejection was founded, is scant, at best, and the court is without information as to its basis. Since the joint medical board of the civil service commission is charged with the duty of passing or rejecting eligibles, there is grave question whether the board is not obliged to make its own independent examination before pronouncing judgment, rather than to accept, without inquiry, the unsupported report of another body. In view of the admitted absence of any examination of the petitioner with respect to hematuria and of the equivocal position of the medical board, the matter must be remitted to the respondents, with directions that they examine him and report their own findings and clarify their position in the premises.
The respondents urge that the expiration of the eligible list on which the petitioner’s name appeared precludes relief, even if he were otherwise entitled to it. The rulings are to the contrary (Matter of Devaney v. Adams, N. Y. L. J., Feb. 17, 1956, p. 7, col. 4; Matter of Shapiro v. Adams, N. Y. L. J., June 2, 1955, p. 7, col. 4; see, also, Matter of Cash v. Bates, 301 N. Y. 258). If a petitioner in a proceeding timely brought ultimately establishes that he was wrongfully refused appointment, justice forbids the denial of his due, solely because of the intervening expiration of the eligible list. Nor can definitive relief be given the petitioner at this time, for the court likewise rejects his contention that his first appointment in June, 1956 gave him a vested right to the position which may be taken from bim only by removal; it overlooks completely his declination of the appointment before he had entered upon the discharge of his duties. When he declined appointment he assumed the legal consequences of his act and thereby risked the possibility of his inability to pass his medical test on his later recertification. Moreover, since his original certification was subject to the “ conditions set forth in the Digest of Information provided by the Civil Service Commission” and the commission’s rule V (§ VII, par. 6) permits revocation of a certification when upon a later medical test an eligible is found not qualified, the commission retained the power of *19 revocation (see Matter of Ciasulli v. McNamara, 277 App. Div. 541).
The petitioner, after passing the necessary examination and meeting all required tests, including a medical test, was in June, 1956 appointed a probationary patrolman. He took the oath of office and received a manual of procedure and shields on June 13, 1956, but did not perform any police service. The following day he requested a leave of absence because of his mother’s illness. He was told that such leave would not be given but that if it was his purpose to enter the next class he should decline the appointment and thereafter notify the civil service commission when he was prepared to enter the police academy. He followed the instructions so given, declined the appointment in writing and on June 14, 1956 returned his manual, shields and other equipment; his name was thereupon removed from the payroll. In September, 1956 the petitioner’s request that the personnel department recertify his name was granted and under date of September 19, 1956 the police department sent him a call letter instructing him to report at the office of the chief surgeon. The examining committee of the police surgeons found that the petitioner had a record of recurrent hematuria in the army and recommended that he be referred back to the department of personnel for further consideration. He was granted re-examination and appeared before the joint medical board of the city civil service commission on October 5 and October 18, 1956. The joint medical board rejected him on each occasion because of the army record already mentioned. Based on this rejection, the commission revoked his certification, thus rendering him ineligible for appointment. This proceeding challenges the validity of such action.
The petitioner avers, and it is not denied, that he was not subjected to any further physical examination by either the police surgeons or the joint medical board after his recertification in September, 1956; reliance was placed entirely on the army record. While an affidavit on behalf of the respondents has been made by a member of the joint medical board, this affidavit is equivocal. It states that a physical examination was not necessary; yet the member of the board suggested that the petitioner enter a hospital and have an intravenous pyelogram, medically known as I.V.P. test, to see whether any abnormalities were present in his body. Following the petitioner’s appearance before the joint medical board, he submitted to tests by a private physician whose report is, annexed to the moving papers. *20 These tests, if not the same, appear, at least, very similar to the test suggested by the member of the joint medical board and the report of this physician is favorable to the petitioner. No comment on this detailed report is made in an answering affidavit.
If the petitioner is to be disqualified medically, both he and the court are entitled to a more explicit statement of the grounds than are revealed in the record as it now stands. The matter is, therefore, remitted.
Settle order.